IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| DEMOCRATIC NATIONAL COMMITTEE; NORTH CAROLINA DEMOCRATIC PARTY, <br><br> Plaintiffs, <br><br> v. <br><br> NORTH CAROLINA STATE BOARD OF ELECTIONS, et al., <br><br> Defendants, <br><br> and <br><br> PHILIP E. BERGER, in his official capacity as President Pro Tempore of the North Carolina Senate; and TIMOTHY K. MOORE, in his official capacity as Speaker of the North Carolina House of Representatives, <br><br> Defendant-Intervenors. | 1:23cv862 |

## ORDER

Before the court is a motion to intervene as Defendants by the Republican National Committee, North Carolina Republican Party, Brenda M. Eldridge, and Virginia Ann Wasserberg ("Movants") (Doc. 35), and a motion to expedite consideration of that motion (Doc. 39). Movants represent that Plaintiffs and Defendants take no position on the motion to intervene. (Doc. 36 at 3 n.2.) In response to this court's text order inquiring whether Plaintiffs

intend to file a response to the motion to expedite, Plaintiffs state that they take no position and do not intend to file a response. (Doc. 40.) Movants seek to intervene as a matter of right, or in the alternative, permissively. (Doc. 36 at 5, 14.) For the reasons set forth below, the motion to intervene will be granted.

I. **BACKGROUND**

This action was filed on October 10, 2023. (Doc. 1.) Plaintiffs are the North Carolina Democratic Party and the Democratic National Committee. They seek injunctive relief against enforcement of Senate Bill 747, which became effective as Session Law 2023-140 on October 10, 2023, and makes changes to North Carolina's elections law, particularly as to same-day registration, early voting, and poll observers. Plaintiffs have moved to preliminarily enjoin the law. (Doc. 6.) Plaintiffs have sued the North Carolina State Board of Elections and its officers and members in their official capacity.

On October 16, 2023, Philip E. Berger, in his official capacity as President *Pro Tempore* of the North Carolina Senate, and Timothy K. Moore, in his official capacity as Speaker of the North Carolina House of Representatives ("Legislative-Intervenors"), moved to intervene (Doc. 31), and the court granted the motion on November 3, 2023 (Doc. 47). The North Carolina Republican Party, the Republican National Committee, Brenda M.

2

Eldridge, and Virginia Ann Wasserberg moved to intervene on October 26, 2023 (Doc. 35), and moved to expedite their request on October 31, 2023 (Doc. 39). Eldridge and Wasserberg are registered Republican voters who "typically vote for Republican candidates, have served as poll observers in the past, and intend to do so in the future." (Doc. 36 at 3.) Wasserberg is also a "county Republican Party chairperson who appoints site-specific and county at-large elections observers." (Id.)

## II. ANALYSIS

On timely motion, "[u]nder Rule 24(a)(2), a district court must permit intervention as a matter of right if the movant can demonstrate '(1) an interest in the subject matter of the action; (2) that the protection of this interest would be impaired because of the action; and (3) that the applicant's interest is not adequately represented by existing parties to the litigation.'" Stuart v. Huff, 706 F.3d 345, 349 (4th Cir. 2013) (quoting Teague v. Bakker, 931 F.2d 259, 260-61 (4th Cir. 1991)). To overcome the "minimal challenge" of showing inadequate representation, an intervenor who has the "same ultimate objective" as the present party must demonstrate "adversity of interest, collusion, or nonfeasance" to undo a presumption in favor of adequacy. Virginia v. Westinghouse Elec. Corp., 542 F.2d 214, 216 (4th Cir. 1976). Where the proposed intervenors' interests do not "overla[p] fully" with the existing party, there is no presumption of adequacy.

3

Berger v. N.C. State Conf. NAACP, 142 S. Ct. 2191, 2205 (2022).

Pursuant to Rule 24(b), the court may permit anyone who "has a claim or defense that shares with the main action a common question of law or fact" to intervene on timely motion. Fed. R. Civ. P. 24(b)(1)(B). "In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). Thus, where a movant seeks permissive intervention, the movant must satisfy three requirements: (1) the motion must be timely; (2) the claims must have a question of law or fact in common with the main action; and (3) intervention must not result in undue delay or prejudice to the existing parties. See Wright v. Krispy Kreme Doughnuts, Inc., 231 F.R.D. 475, 479 (M.D.N.C. 2005); Solo Cup Operating Corp. v. GGCV Energy LLC, Civil No. WDQ-12-3194, 2013 WL 2151503, at *2 (D. Md. May 15, 2013); Shanghai Meihao Elec., Inc. v. Leviton Mfg. Co., 223 F.R.D. 386, 387 (D. Md. 2004). Trial courts are directed to construe Rule 24 liberally to allow intervention where appropriate. Feller v. Brock, 802 F.2d 722, 729 (4th Cir. 1986) (noting that "liberal intervention is desirable to dispose of as much of a controversy involving as many apparently concerned persons as is compatible with efficiency and due process" (citations and internal quotation marks omitted)); Capacchione v. Charlotte-Mecklenburg Bd. of Educ., 179 F.R.D. 505, 507 (W.D.N.C. 1998) (same).

## A. Intervention as of Right

Under Rule 24(a), Movants argue that their motion — filed just 16 days after the commencement of this action — is timely. (Doc. 36 at 6.) The court agrees. See, e.g., Alt v. U.S. E.P.A., 758 F.3d 588, 591 (4th Cir. 2014) ("In order to properly determine whether a motion to intervene in a civil action is sufficiently timely, a trial court in this Circuit is obliged to assess three factors: first, how far the underlying suit has progressed; second, the prejudice any resulting delay might cause the other parties; and third, why the movant was tardy in filing its motion." (citation omitted)).

Second, Movants contend that they have a significant interest in the litigation that would be impaired without their intervention. (Doc. 36 at 7.) Specifically, Movants point to their significant resource expenditures on conduct that the challenged statute regulates, and that the litigation could impact the electoral "competitive environment." (Id. at 7-10.) Both Eldridge and Wasserberg also have an interest as voters who serve as poll observers who claim to be directly affected by the provisions of S.B. 747 addressing poll observers. (Id. at 3.) The court agrees that the Movants have a significant interest in the litigation. Cf. Thomas v. Andino, 335 F.R.D. 364, 370 (D.S.C. 2020) (observing political party's significant interest where party's candidates would be affected by change in election law).

5

Regarding whether the existing Defendants adequately represent their interests, Movants point to public opposition to the statute by the North Carolina Attorney General, whose office is responsible for defending the challenged statute, and argue that the State Board of Elections, as a neutral administrator, is unlikely to represent Movants' political interests. (Id. at 11-12.) Movants also argue that the Legislative-Intervenors inadequately represent their interests because they represent state interests and would be limited in their litigation strategy due to resource constraints. (Id. at 13.)[1] Movants' contentions may have some merit. Stuart, 706 F.3d at 352; Citizens for Balanced Use v. Mont. Wilderness Ass'n, 647 F.3d 893, 899 (9th Cir. 2011) ("[T]he government's representation of the public interest may not be identical to the individual parochial interest of a particular group just because both entities occupy the same posture in the litigation.") (citations and internal quotation marks omitted). (Compare Doc. 32 at 4 (demonstrating Defendant-Intervenors' unequivocal support for challenged statute), with Doc. 36 at 2-3 (same for Movants).) But because Movants satisfy

---

[1] Movants argue that the court should only consider whether "existing Defendants," not the Legislative-Intervenors, adequately represent them. (Doc. 36 at 13 (citing Stuart, 706 F.3d at 349).) Movants quote Stuart as applying to "existing defendants," but the Stuart court was not deciding whether an existing defendant-intervenor could adequately represent a proposed intervenor. See Stuart, 706 F.3d at 348-49. Absent any other justification, the court is unpersuaded that the Legislative-Intervenors' status meaningfully alters the analysis.

6

the standards for permissive intervention, the court need not reach a definitive determination.

## B. Permissive Intervention

Movants argue in the alternative that the court should grant permissive intervention under Rule 24(b). Movants contend that their defense shares common question of fact and law. (Doc. 36 at 14.) By all appearances, Movants are correct, as they seek to mount what appears to be a similar defense as that of existing Defendants or the Legislative-Intervenors. Movants further argue that their "unique perspective on the election laws" and position as the "mirror-image" of Plaintiffs further bolsters the justification to permit intervention. (Id. at 15 (quoting Democratic Nat'l Comm. v. Bostelmann, No. 20-CV-249, 2020 WL 1505640, at *5 (W.D. Wis. Mar. 28, 2020); Democratic Party of Va. v. Brink, No. 3:21-cv-756, 2022 WL 330183, at *2 (E.D. Va. Feb. 3, 2022)).) Courts have frequently found such arguments persuasive when a political party seeks to intervene permissively. See, e.g., Mi Familia Vota v. Hobbs, No. CV-21-01423, 2021 WL 5217875 (granting permissive intervention to Republican National Committee, National Republican Senatorial Committee, Democratic Senatorial Campaign Committee, and Democratic Congressional Campaign Committee) (D. Ariz. Oct. 4, 2021); Bostelmann, 2020 WL 1505640, at *5 (granting Republican National Committee and Republican Party of Wisconsin permissive intervention with

7

Democratic National Committee as party-opponent); Brink, 2022 WL 330183, at *2 (granting permissive intervention to Republican Party of Virginia with Democratic Party of Virginia and Democratic Congressional Campaign Committee as party-opponents); cf. Issa v. Newsom, No. 2:20-cv-1044, 2020 WL 3074351, at *3-4 (E.D. Cal. June 10, 2020) (granting intervention as of right to Democratic Congressional Campaign Committee and Democratic Party of California with Republican National Committee as party-opponent).[2] This court finds them persuasive here as well.

With the Democratic National Committee and North Carolina Democratic Party on one side of the lawsuit, permissive intervention of their political counterparts — the Republican National Committee and the North Carolina Republican Party — would strike an appropriate balance and allow the court to consider any potentially unique positions on the challenged statutes not raised by the existing Defendants or Legislative-Intervenors. As noted, both Eldridge and Wasserberg, moreover, have an interest as voters who serve as poll observers who claim to be directly affected by the provisions of S.B. 747 addressing poll observers. Furthermore, the addition of Movants as Defendants will not cause undue delay or prejudice to the parties. Movants' contentions will likely

---

[2] Legislative-Intervenors cite a host of other cases granting intervention to various constituencies of both the Democratic and Republican parties. (Doc. 36 at 4 n.3, 10 n.4.)

8

Case 1:23-cv-00862-TDS-JEP   Document 48   Filed 11/06/23   Page 8 of 9

complement or directly overlap with the legal and factual issues already present in the case. This court is also well-equipped to develop pretrial practices that will avoid unnecessary duplication.

## III. CONCLUSION

For the reasons set forth above,

IT IS THEREFORE ORDERED that that the Movants' motion to expedite (Doc. 39) is GRANTED; and

IT IS FURTHER ORDERED that Movants' motion to intervene (Doc. 35) is GRANTED.

/s/ Thomas D. Schroeder<br>United States District Judge

November 6, 2023

9

Case 1:23-cv-00862-TDS-JEP   Document 48   Filed 11/06/23   Page 9 of 9