**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**
**No. 1:23-CV-862**

| | |
|---|---|
| DEMOCRATIC NATIONAL COMMITTEE; *et al.*,<br><br>    Plaintiffs,<br><br>  v.<br><br>NORTH CAROLINA STATE BOARD OF ELECTIONS; *et al.*,<br><br>    Defendants. | **MEMORANDUM IN SUPPORT OF MOTION TO DISMISS** |

## INTRODUCTION AND STATEMENT OF THE NATURE OF THE MATTER

Intervenor-Defendants Philip E. Berger, in his official capacity as President *Pro Tempore* of the North Carolina Senate, and Timothy K. Moore, in his official capacity as Speaker of the North Carolina House of Representatives (collectively, the "Legislative Defendants") submit this Memorandum in Support of their Motion to Dismiss. Plaintiffs' Amended Complaint, D.E. 75, should be dismissed pursuant to Rules 12(b)(1) and 12(b)(2) of the Federal Rules of Civil Procedure.

## STATEMENT OF FACTS

On February 6, 2024[1], Plaintiffs filed an Amended Complaint, D.E. 75, making several changes to the original Complaint, D.E. 1, including *inter alia* removing all state

---

[1] The factual background of Senate Bill 747 ("S.B. 747") has been briefed several times in this matter. For a description of the factual and procedural background of this case up until the Court preliminary enjoined the undeliverable mail provision on January 21, 2024, see D.E. 68. Legislative Defendants further refer the Court to the fact section at pp. 2-6 of State Board Defendants' Memorandum in Support of their Motion to

constitutional claims and adding a claim for alleged violations of the National Voter Registration Act ("NVRA"). In total, Plaintiffs' Amended Complaint sets forth six causes of action. [D.E. 75]. Count I alleges that S.B. 747 violates the First and Fourteenth Amendments to the Constitution by imposing undue burdens on North Carolinians' right to vote through the same-day registration ("SDR") regulations in §10.(a)[2]; the absentee ballot deadline in §35[3]; and poll observer provisions in §§7.(a)-(b)[4]. [*Id.* at ¶¶61-74]. Count II alleges that the SDR provisions in S.B. 747 §10.(a) that deny a same-day registrant's application after a single undeliverable mail verification and allegedly do not provide notice or an opportunity to be heard upon an adverse determination on a voter registration application violate procedural due process protections under the Fourteenth Amendment. [*Id.* at ¶¶75-87]. Count III alleges that the same SDR provisions at issue in Count I[5] also violate the Civil Rights Act of 1964 ("CRA"), 52 U.S.C. §10101(a)(2)(A), by purportedly applying "different sets of individuals who are qualified under North Carolina law to vote and who reside in the same county." [*Id.* at ¶¶88-94]. Count IV alleges that S.B. 747

Dismiss, D.E. 80, regarding North Carolina's implementation of the National Voter Registration Act, SEIMS, and the noncitizen-juror removal provision.
[2] Plaintiffs claim that §10.(a) *inter alia* (1) requires same-day registrants to provide both a Photo ID and a HAVA document unlike other applicants; (2) denies a same-day registrant's application after a single undeliverable mail verification; and (3) fails to "expressly permit a same-day registrant to appeal any adverse determination about registration to the county boards of elections" [D.E. 75 at pp. 23-26].
[3] Plaintiffs claim that §35 imposes a significant burden on the right to vote by shortening the window by which an absentee by mail ballot can be received via USPS delivery by the county board of elections from 5:00 p.m. three days after an election to 7:30 p.m. on Election Day.[*Id.* at p. 26]
[4] Plaintiffs claim that §§7.(a)-(b) permits poll observers to move freely around the voting place to engage in intrusive activities; and that those sections provide vague standards governing poll observer conduct (for example, like prohibiting certain activities that "interfere with the privacy of any voter"). [*Id.* at pp. 27-28].
[5] Plaintiffs claim that §10.(a) *inter alia* (1) requires same-day registrants to provide both a Photo ID and a HAVA document unlike other applicants; (2) denies a same-day registrant's after a single undeliverable mail verification without notice and an opportunity to be heard; and (3) fails to "expressly permit a same-day registrant to appeal any adverse determination about registration to the county boards of elections[.]" [*Id.* at pp. 28-26].

2

violates the Help America Vote Act ("HAVA"), 52 U.S.C. §21082, by purportedly failing to establish a free access system for the tracking of retrievable ballots. [*Id.* at ¶¶95-98]. Count V alleges that S.B. 747's poll observer provisions in §§7.(a)-(b) violate Section 11(b) of the Voting Rights Act ("VRA"), 52 U.S.C. §10307(b), by permitting poll observers to move freely around the voting place to engage in intrusive activities, and imposing vague standards governing poll observer conduct such that it is highly likely to intimidate voters. [*Id.* at ¶¶99-102]. Lastly, Count VI alleges that S.B. 747's requirements that all SDR registrants be added to the statewide database within two days of registration then allegedly be removed upon a single undeliverable mail verification, and use of non-citizen jury duty questionnaires for list maintained both violate the NVRA by "systematically remov[ing] the names of ineligible voters from the official lists of eligible voters." [*Id.* at ¶¶103-111].

The Amended Complaint was filed on the heels of the Court's January 21, 2024 Order (the "PI Order") that preliminarily enjoined Defendants from "utilizing the procedures of N.C.G.S. §163-82.6B(d) to remove from the official count the votes of the ballot of any voter who has provided contact information in the registration process and whose first notice required under N.C.G.S. §163-82.7(c) is returned by the Postal Service as undeliverable before the close of business on the business day before the canvass, without first providing such voter notice and an opportunity to be heard[.]" [D.E. 68 at pp.

93-94]. The PI Order was limited to granting injunctive relief on the undeliverable mail provision of S.B. 747 §10.(a)[6].

On January 29, 2024, the North Carolina State Board of Elections ("NCSBE") issued an updated Numbered Memo 2023-05, *see* D.E. 71, 71-1, in direct response to the PI Order, which resolves Plaintiffs' concerns regarding the undeliverable mail provisions in Counts I, II, and III of the Amended Complaint.

## <u>STATEMENT OF QUESTION PRESENTED</u>

1.  Does the Court have Article III subject matter jurisdiction to resolve Plaintiffs' claims?

2.  Even if the Court has subject matter jurisdiction, have Plaintiffs pleaded facts sufficient to state a claim upon which relief can be granted?

## <u>ARGUMENT</u>

**I.  The Court no longer has Article III subject matter jurisdiction to resolve Plaintiffs' claims.**

Since the NCSBE Defendants issued the updated Numbered Memo 2023-05 on January 29, 2024, *see* D.E. 71, 71-1, there is no longer a live case or controversy that the Court can redress. *See Summers v. Earth Island Inst.*, 555 U.S. 488, 492 (2009) (discussing U.S. Const. art. III, §§ 1, 2); *TransUnion LLC v. Ramirez*, 594 U.S. 413, 424 (2021) ("In sum, under Article III, a federal court may resolve only 'a real controversy with real impact

---

[6] Plaintiffs also moved for a preliminary injunction under the CRA and HAVA. The Court denied preliminary injunctive relief on those grounds. The Court held that Plaintiffs failed to show a likelihood of success on the merits of their CRA claim because they failed to establish that the CRA protects SDR voters as a protected class. [*Id.* at 41]. The Court also held that Plaintiffs failed to show a likelihood of success on the merits on their HAVA claim because North Carolina law treats provisional and SDR retrievable ballots differently. [*Id.* at pp. 44-45].

on real persons.'" (internal quotation omitted)). Numbered Memo 2023-05 establishes "a process that provides a notice and opportunity to cure for same-day registrants whose first notice is returned as undeliverable" in direct response to the PI Order. [D.E. 71 at pp. 1-2]. As such, Plaintiffs' claims regarding the undeliverable mail provision are not live (Counts I, II, and III), and adjudication of the remaining abstract and hypothetical claims set forth in the Amended Complaint would result in an advisory opinion. *See TransUnion LLC*, 594 U.S. at 423-24; *Democracy N.C. v. N.C. State Bd. Of Elections*, 590 F. Supp. 3d 850, 869 (M.D.N.C. 2022) ("Because there is a sufficient cure procedure currently in place in North Carolina, this court finds any injury to Plaintiffs is not ripe for review."). As such, Plaintiffs' claims should be dismissed.[7]

**A.  Plaintiffs do not have standing to challenge the absentee ballot deadline or poll observer provisions of S.B. 747.**

Even if there was a live case or controversy for the Court to resolve, Plaintiffs have failed to plead sufficient facts to show that they have standing to challenge the sections of S.B. 747 unrelated to the undeliverable mail provision (i.e., the absentee ballot deadline, §35, and poll observer provisions, §§7.(a)-(b)).[8] *See Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir.1982) (footnote omitted).

---

[7] To the extent that Plaintiffs argue that the General Assembly could act to address this issue in the future, that is unconvincing. The General Assembly could act on any topic at any time in the future. But speculative future action is not reason for this Court to maintain jurisdiction over claims addressing the undeliverable mail provision, which no longer requires a court for redress.

[8] The PI Order made a preliminary finding that Plaintiffs had standing for those claims brought in their Motion for Preliminary Injunction. [D.E. 68 at 35]. But the Court did not address whether Plaintiffs had standing to bring their other claims.

5

To establish Article III standing, the party invoking federal jurisdiction must show: (1) an "injury in fact[;]" (2) "a causal connection between the injury and the conduct complained of[;]" and (3) that it is "'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992) (internal quotations omitted). At the motion to dismiss stage, "the party invoking the jurisdiction of the court must include the necessary factual allegations in the pleading, or else the case must be dismissed for lack of standing." *Bishop v. Bartlett*, 575 F.3d 419, 424 (4th Cir. 2009) (internal citation omitted).

### 1. Plaintiffs fail to state an actual, imminent injury.

The "injury in fact" element of Article III standing requires a plaintiff to have a "personal stake in the outcome of the controversy." *Warth v. Seldin*, 422 U.S. 490, 498 (1975). When an alleged harm amounts to a "generalized grievance" shared by all or a large class of citizens, that harm alone normally does not warrant exercise of jurisdiction." *Warth* 422 U.S. at 499. Thus, the "injury in fact" element is only met when an injury is both "concrete *and* particularized" to the defendant. *Spokeo, Inc. v. Robbins*, 578 U.S. 330, 334 (2016) (quotation omitted) (emphasis in original). An injury is concrete when it is actual and specific, not speculative. *Doe v. Virginia Dept. of State Police*, 713 F.3d 745, 758 (4th Cir. 2013).

The Amended Complaint fails to state facts sufficient to show that any potential harms from the poll observer or absentee by mail provisions of S.B. 747 are "real, immediate, and direct." *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008); *see* S.B. 747 §§7.(a)-(b), §35. [D.E. 75 at ¶¶ 21-26]. Despite the fact that absentee by mail

6

voting had begun at the time of Plaintiffs' Amended Complaint, Plaintiffs point to no Democrats who intended to vote absentee but were waiting to mail in their absentee ballots until close in time to Election Day. Plaintiffs also cannot and did not point to any incidents of poll observer intimidation. As to their own members, Plaintiffs merely speculate, without alleging underlying facts, that it is "exceedingly likely that one or more members of NCDP . . . will be removed from the voting rolls or otherwise prevented from voting because of S.B. 747." [D.E. 75 at ¶25]. Such broad, unparticular allegations are insufficient. *See Bishop,* 575 F.2d at 424 (quotation omitted); *Lane v. Holder*, 703 F.3d 668, 674–75 (4th Cir. 2012).

## 2. Even if Plaintiffs stated an injury in fact, it is not likely that the injury will be redressed by a favorable decision.

"An injury is redressable if it is 'likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.'" *Doe*, 713 F.3d at 755; *Leifert v. Strach*, 404 F.Supp.3d 973, 988 (M.D.N.C. 2019). While this burden is not stringent, it is "problematic when third persons not parties to the litigation must act in order for an injury to arise or be cured." *Id.* at 755. In such situations, even when constitutional harm is alleged, the Fourth Circuit has refused to find standing when there "exists an unchallenged, independent rule, policy, or decision that would prevent relief even if the court were to render a favorable decision." *Id.* at 756 (holding that because Plaintiff had not yet attempted to follow the statutory process for challenging the statute in question, the Court had no way of determining whether her constitutional rights would ultimately be infringed); *Iota Xi Chapter of Sigma Chi Fraternity v. Patterson*, 566 . 3d 138, 148–49 (4th Cir. 2009).

7

First and foremost, this litigation cannot adequately redress Plaintiffs' concerns when they get the existing law wrong. To the extent that Plaintiffs challenge the requirement that SDR voters must present two forms of identification (Counts I and III), both Photo ID and a HAVA document, that has always been the case. *See* Numbered Memo 2016-15. [D.E. 68 at p. 11 n.10].

The claims regarding poll observer conduct in S.B. 747 §§7.(a)-(b) (Counts I and V) also seek relief that already exists. Plaintiffs claim that §§7.(a)-(b) "permits poll observers to engage in intrusive activities in voting places" and that the standards in §7.(a)-(b) are vague. [D.E. 75 at ¶72]. But properly appointed observers have always been permitted to "move around the voting *place,*" even though the statute did not expressly confer that right. 1967 N.C. Sess. Laws 865; 1973 N.C. Sess. Laws 1171; *see* N.C.G.S. §163-165 (distinguishing the voting place from the voting enclosure)[9]. And that right has always come with specific statutory limitations and protections that prohibit conduct that might "impede the voting process or interfere or communicate with or observe any voter in casting his ballot." *Id.*; 1991 N.C. Sess. Laws 2379; 1993 N.C. Sess. Laws 690-91; 1995 N.C. Sess. Laws 441; 2005 N.C. Sess. Laws 1655; 2007 N.C. Sess. Laws 1165; 2013 N.C. Sess. Laws 1531; N.C.G.S. §163-45; S.B. 747 §7.(b). Furthermore, election officials may still regulate a poll observer's movement around the voting place if an observer "interfere[s] with the privacy of any voter or the conduct of the election[.]" S.B. 747 §7.(b).

---

[9] The "voting place" is defined as "the building or area of the building that contains the voting enclosure." §163-165(10). The "voting enclosure" is defined as "the room within the voting place that is used for voting." §163-165(9).

Permanently enjoining §§7.(a)-(b) would not redress Plaintiffs' concerns because there are myriad existing laws and regulations that police the conduct of poll observers, for example:

- N.C.G.S. §163-45.1(e), which limits the number of observers in the voting enclosure to no more than three from each political party at any time.

- N.C.G.S. §163-45.1(h), which expressly prohibits poll observers from (1) "Look[ing] at, photograph[ing], videotap[ing] or otherwise record[ing] the image of any voter's marked ballot[;]" (2) "Imped[ing] the ingress or egress of any voter into the voting place;" (3) otherwise "inhibit[ing] or interfere[ing] with any election official in the performance of his or her duties[;]" (4) "Engag[ing] in electioneering[;]" and (5) "Mak[ing] or receiv[ing] phone calls while in the voting place."

- N.C.G.S. §163-45.1(j), which allows a chief judge to remove an observer for "good cause, which shall include evidence that the observer could impact the conduct of the election." *See also* N.C.G.S. §163-47(a) and §163-48 (granting similar authority to all precinct judges, including authority to call for law enforcement to assist in enforcing election laws).

- 08 N.C. Admin. Code 20.0101 (challenging observer appointments), 08 N.C. Admin. Code 20.0102 (appeal of removal of an observer from a voting site), and 08 N.C. Admin. Code 20.0101 (requiring observers to wear identification badges while in the voting place).

- Numbered Memo 2023-06, which provides particular examples of prohibited conduct by poll observers surveying a variety of laws and caselaw.

- N.C.G.S. §163-166.3(c), which completely prohibits any photographing or videotaping within the voting enclosure with permission from both the voter and the precinct's chief judge.

- N.C.G.S. §163-274, which provides for criminal prosecution for certain acts that interfere with the work of elections officials, interfere with or attempt to interfere with any voter inside the voting enclosure.

- N.C.G.S. §163-4(a), which prohibits harassment within the voting place or buffer zone.

9

- Other state and federal laws that consider voter intimidation a crime, like N N.C.G.S. §163-165.1(e); 18 U.S.C. §594; 52 U.S.C. §20511(1); and 52 U.S.C. §10307(b).

It is clear that preexisting laws allow for the poll observer protections that Plaintiffs seek. Even so, Plaintiffs' allegations regarding poll observers are especially attenuated because they rely on third party conduct. For S.B. 747 to cause the harm Plaintiffs contemplate would require a properly appointed poll observer to ignore the existing rules and for local officials to choose not to enforce the existing rules and conditions. This chain of inferences is insufficient for Plaintiffs' alleged injury to be fairly traceable to S.B. 747. *See Clapper v. Amnesty Intern. USA*, 568 U.S. 398, 414 n. 5 (2013) (holding injury was not fairly traceable to challenged statute "in light of the attenuated chain of inferences necessary to find harm"). This is especially true in light of State Board Defendants' commitment "to ensuring that all eligible North Carolina voters are able to cast their ballots free of interference and intimidation" and to "enforce[e] the myriad state laws intended to prevent precisely the kinds of harm to voters identified in Plaintiffs' [amended] complaint." [D.E. 73 at 9].

As to the absentee by mail deadline, Plaintiffs have wholly failed to plead facts demonstrating "a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement." *Disability Rights S. Carolina v. McMaster*, 24 F.4th 893, 901 (4th Cir. 2022) (emphasis omitted). Plaintiffs have not pled any facts or made any allegation to show how S.B. 747's absentee by mail deadline will have a disparate impact on Democrats (who are not themselves a suspect class), nor have they alleged anything showing how the provision might target Democrats.

10

Plaintiffs do not have Article III standing on the remaining live controversies and, therefore, the Amended Complaint should be dismissed.

**B.** **Plaintiffs' claims relating to the absentee ballot deadline and poll observer provisions of S.B. 747 are not ripe.**

Even if Plaintiffs have standing to challenge the absentee by mail deadline and poll observer provisions, those claims (Counts I and V) and Plaintiffs' NVRA claim (Count VI) are not yet ripe for adjudication. When determining whether a controversy is ripe for judicial determination, federal courts consider "both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Abbott Laboratories v. Gardner*, 387 U.S. 136, 149 (1967), *overruled on other grounds, Califano v. Sanders*, 430 U.S. 99 (1977). "Under the fitness for review inquiry, a court considers whether the issues presented are purely legal, as opposed to factual, and the degree to which the challenged action is final." *Id.* "Where an injury is contingent upon a decision to be made by a third party that has not yet acted, it is not ripe as the subject of decision in a federal court." *Doe v. Virginia Dept. of State Police*, 713 F.3d 745, 758-59 (4th Cir. 2013). (citations omitted).

Here, both the absentee ballot deadline and poll observer provisions of S.B. 747 are contingent upon decisions of third parties. The absentee ballot deadline does not present an injury unless or until some unknown Democratic voter delays mailing their ballot to the county board of elections and risks that the ballot not be received by 7:30p.m. on Election Day. See S.B. 747 §35. Moreover, this is an attenuated harm that will impact all voters, not just Democratic voters, and one that can be alleviated by voter diligence.

11

Likewise, the poll observer claims also rest on future third party conduct. Even assuming *arguendo* that poll observer conduct is now unlimited (even though it is regulated by separate statutes and NCSBE guidance), Plaintiffs' alleged harm will only occur if some unknown poll observer chooses to intimidate an unknown Democratic voter at some point in the future. There is no evidence of this occurring to date.

Similarly, Plaintiffs claim that the non-citizen jury duty provision of S.B. 747 will result in a program removing eligible voters from the official voter rolls within 90 days of a federal election in violation of the NVRA (Count VI) is not yet ripe. The NCSBE would have to first set a schedule whereby that information would be used close in time to a federal election in a systematic way. That has not yet happened and, as shown by NCSBE's response letter at D.E. 75-3, is highly unlikely to happen in the future.

Because Plaintiffs have not yet suffered an injury due these provisions and any alleged future injury "remains wholly speculative," Plaintiffs' allegations regarding the absentee by-mail deadline, poll observers, and the non-citizen jury duty provision Counts I, V, and VI) should be dismissed as not ripe. *Doe,* 713 F.3d at 759 (quotation omitted).

## II. In the alternative, the Amended Complaint should be dismissed for failure to state a claim upon which relief can be granted.

Alternatively, Plaintiffs fail to plead sufficient facts which, accepted as true, state a claim of relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plaintiffs' claims should be dismissed.

12

**A. Plaintiffs fail to show that S.B. 747 imposes an undue burden (Count I) on North Carolinians' right to vote.**

The *Anderson/Burdick* test is used to assess undue burden claims under the First and Fourteenth Amendments, whereby a court must "consider the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that [Plaintiffs] seek[ ] to vindicate." *Anderson*, 460 U.S. at 789. Then, the court "must identify and evaluate the precise interests put forward by the State as justifications for the burden imposed by its rule" and weigh "the legitimacy and strength of each of those interests." *Id.* The court must also "consider the extent to which those interests make it necessary to burden the plaintiff's rights." *Id.* However, "when a state election law provision imposes only 'reasonable, nondiscriminatory restrictions' upon the First and Fourteenth Amendment rights of voters, 'the State's important regulatory interests are generally sufficient to justify' the restrictions." *Burdick*, 504 U.S. at 434. Here, Plaintiffs challenge the SDR provisions in §10.(a); the absentee ballot deadline in §35, and poll observer provisions in §§7.(a)-(b). Because NCSBE issued an updated Numbered Memo 2023-05 addressing the Court's concerns in the PI Order, Legislative Defendants maintain that the claims relating to the SDR provisions in §10.(a) are no longer redressable by this Court, as further relief is unnecessary. *See supra* pages 4-5. As such, Legislative Defendants only address whether the absentee ballot deadline in §35 and poll observer provisions in §§7.(a)-(b) impose an undue burden on the right to vote.

13

### i.    The magnitude of the alleged constitutional violation is minimal.

First, Plaintiffs entirely ignore that no one is required to use mail-in absentee ballot voting. And S.B. 747 §35 does not say that an absentee voter must use the mail.  An absentee voter may also drop off the ballot during early voting at any early voting site.  An absentee voter, or that voter's near relative or verifiable legal guardian, may also drop off the absentee ballot at the appropriate county board of elections at any time up to 7:30 p.m. on Election Day. [10]

Additionally, the Supreme Court has rejected arguments that voter inaction or negligence disenfranchises the voter. *See Rosario v. Rockefeller*, 410 U.S. 752, 757–58 (1973) ("[I]f their plight can be characterized as disenfranchisement at all, it was not caused by [the challenged voting regulation], but by their own failure to take timely steps to effect their enrollment."); *see also Ariz. Democratic Party v. Hobbs*, 18 F.4th 1179, 1188 (9th Cir. 2021) ("Most forms of voter negligence have no remedy."). North Carolina allows for no-excuse absentee voting for all registered voters. *See* N.C.G.S. §163-230.1. A voter can request an absentee ballot at any time until 5:00 p.m. the Tuesday before Election Day using the online absentee ballot portal or via a paper application that may be returned in person, by mail, or via private shipping (like FedEx) to the county board of elections. *Id.*[11] Requested absentee ballots are sent up to 45 days before Election Day. *See* N.C.G.S. §163-227.10. Ballots can be returned via mail, or in person to the county board of elections

---

[10] *See also* https://www.ncsbe.gov/voting/vote-mail/detailed-instructions-vote-mail#Tab-3ReturnaBallot-686.

[11] *See also* https://www.ncsbe.gov/voting/vote-mail.

or to any election official at any early voting site in the voter's county. This means that diligent voters have nearly 45 days to return their completed absentee ballots. Given the plethora of options to request and return an absentee ballot, any failure to take advantage of North Carolina's opportunities to return a timely absentee ballot and instead assume the risk of mailing an absentee ballot to the county board of elections close in time to Election Day cannot be characterized as disenfranchisement.

As to the poll observers provisions of §§7.(a)-(b), any constitutional harm is speculative at best. As explained *supra*, poll observers are simply not entitled to engage in intrusive activities at will as Plaintiffs claim. Rather it is well-established that additional statutes and rules promulgated by the NCSBE govern poll observer conduct, and that these regulations empower the polling place chief to act to remove observers who violate these rules. *See supra* pp. 8-9. Moreover, to the extent that the Amended Complaint implies that only Republican poll observers can invade the privacy of voters, this is not only nonsensical, but offensive. The same statutory provisions allow for Plaintiff, the North Carolina Democratic Party, to appoint poll observers who can either report or attempt to engage in intrusive poll observer behavior. Because the NCDP is governed by the same rules as everyone else, it is unclear how this is particularly burdensome.

### ii. The State's interests are legitimate.

Under *Anderson/Burdick,* where an election regulation imposes a minimal burden that is non-discriminatory, courts "only ask that the state 'articulate' its asserted interests." *Libertarian Party of Va. v. Alcorn*, 826 F.3d 708, 719 (4th Cir. 2016) (quoting *Timmons*,

520 U.S. at 358) (cleaned up). "'[E]laborate, empirical verification of weightiness' is not required." *Id.* (quoting *Timmons*, 520 U.S. at 364) (cleaned up).

"Confidence in the integrity of our electoral processes is essential to the functioning of our participatory democracy," *Purcell v. Gonzales,* 549 U.S. 1, 4 (2006), and is another compelling state interest here. [*See* D.E. 68 at 71 ("North Carolina unquestionably has a legitimate and strong interest in ensuring the integrity of its elections, ensuring that only legitimate ballots are counted, and in preventing voter fraud." (citing *Purcell*, 599 U.S. at 4)]. To promote confidence in the election process, the General Assembly has an interest in setting deadlines that ensure election finality and permitting the political parties limited observation rights at the polls. These interests are furthered by the absentee by-mail deadline that provides for finality on Election Day. To the extent that there might be any burden in shortening the deadline to return absentee ballots to the county board of elections by Election Day, that burden is minimal when an absentee voter may opt to return their own ballot to the appropriate county board on Election Day up until 7:30 p.m.

It is beyond dispute that "[r]easonable regulation of elections . . . does require [voters] to act in a timely fashion if they wish to express their views in the voting booth." *Burdick*, 504 U.S. at 438. North Carolina provides voters ample timely opportunities to express their views—including through the use of absentee by-mail voting. The State must balance those opportunities with the compelling government interests of the County Boards of Elections to allow for elections that are open to all political parties. Because S.B. 747 does not present a significant burden on the right to vote, and the General Assembly has a

16

compelling interest in the rights protected by S.B. 747, Count I of Plaintiffs' Complaint must be dismissed pursuant to Fed. R. Civ. P 12(b)(6).

**B.     Plaintiffs lack statutory standing under the CRA (Count III).**

As forecast by the Court in its January 21, 2024 Order, the CRA does not create a private right of action. [D.E. 68 at pp. 37-41]. Only "[o]nce a statute confers an individual right [may] the right be presumptively enforceable by §1983." *Gonzaga Univ. v. Doe*, 536 U.S. 273, 285 (2002).  To determine whether a statute confers an individual right, courts must "determine whether or not a statute 'confer[s] rights on a particular class of persons.'" *Id.* (*quoting California v. Sierra Club*, 451 U.S. 287, 294 (1981)). Here, Plaintiffs claim that the CRA prohibits treating SDR and timely registrants differently in election law standards, practice, and procedures. *See* 52 U.S.C. §10101(a)(2)(A).  But the CRA does not confer particular rights on SDR voters as a class. *See id.*; 52 U.S.C. §10101(a)(2)(A) (referencing an "individual" compared to "other individuals"). In fact, Plaintiffs' claims are directly on par with a case where district courts found that photo ID requirements did not violate the CRA even though it treated absentee and election day voters differently *Ind. Democratic Party v. Rokita*, 458 F. Supp. 2d 775, 839 (S.D. Ind. 2006), *aff'd sub nom. Crawford v. Marion Cnty. Election Bd.*, 472 F.3d 949 (7th Cir. 2007), *aff'd*, 533 U.S. 181 (2008). This is because the CRA does not prevent states from utilizing different standards based on the method of voting in and of itself. Thus, it is clear that North Carolina may provide different methods of voter registration without running afoul of the CRA. And, because Plaintiffs "have not fairly raised any allegation of discrimination against a protected class," the CRA claim should be dismissed. [D.E. 68 at 41].

17

## C.    Plaintiffs lack statutory standing under HAVA (Count IV).

For similar reasons, Plaintiffs also lack statutory standing under HAVA. *See Crowley v. Nevada ex rel. Nev. Sec'y of State*, 678 F.3d 730, 735 (9th Cir. 2012). [D.E. 68 at pp. 41-45]. Even so, the plain text of the sub-section of HAVA that Plaintiffs rely on only applies to "any individual who casts a provisional ballot[.]" 52 U.S.C. §2108(a)(5)(B). But North Carolina law defines a "provisional official ballot" and a "retrievable ballot" differently. *Compare* N.C.G.S.§163-165(6) (defining a provisional ballot) *with* §166.45 (defining "retrievable ballot"). [D.E. 68 at p. 44]. A separate HAVA notification system already applies to the "provisional official ballots." Plaintiffs have not raised any new HAVA arguments in their Amended Complaint, see D.E. 75and thus Plaintiff's HAVA claim must be dismissed.

## D.    Plaintiffs failed to state a claim under §11(b) of the VRA (Count V).

While it is questionable as to whether §11(b) of the VRA creates a private right of action, *see, e.g. Andrews v. D'Souza*, No. 1:22-cv-04259-SDG, 2023 WL 6456517, at *10-*11 (N.D. Ga. Sept. 30, 2023), Plaintiffs do not fall within the class of persons that the VRA was designed to protect. Section 11(b) states:

> No person, whether acting under color of law or otherwise, shall intimidate, threaten, or coerce, or attempt to intimidate, threaten, or coerce any person for voting or attempting to vote, or intimidate, threaten, coerce, or attempt to intimidate, threaten, or coerce any person for urging or aiding any person to vote or attempt to vote, or intimidate, threaten, or coerce any person from exercising any powers or duties under section 10302(a), 10305, 10306, or 10308(e) of this title or section 1973d or 1973g of Title 42.

52 U.S.C. §10307(b). It is unclear how Plaintiffs, themselves political parties, one of which has the power to appoint poll observers, have standing to challenge a statute that does not

18

compel any other person to act. This is especially true in light of other provisions that regulate the conduct of poll observers. *See supra* pp. 8-9. Nevertheless, Plaintiffs have failed to allege any particular acts of physical force or intimidation that could be construed as stating a claim under Section 11(b). *See Acosta v. Democratic City Comm.*, 288 F. Supp. 3d 597, 647-48 (E.D. Pa. 2018) (dismissing claim under §11(b) because plaintiffs failed to provide any factual allegations to support the claim); *Allen v. City of Graham*, Nos. 1:20-CV-997, 1:20-CV-998, 2021 WL 2223772, *7 (M.D.N.C. June 2, 2021) (discussing *Acosta*).

### E. Plaintiffs have failed to state a claim under the NVRA (Count VI).

Count VI of the Amended Complaint is brought under the National Voter Registration Act, 52 U.S.C. §20507(c)(2)(A), which provides that in order to meet the requirement under §20507(a)(4)[12], a state must "complete, not later than 90 days prior to the date of a primary or general election for Federal office, any program the purpose of which is to systematically remove the names of ineligible voters from the official lists of eligible voters." Plaintiffs state two theories, both of which fail to state a claim.

First, Plaintiffs confuse same-day registrants with same-day applicants. Same-day registrants only become a registered voter once an application is approved. The NVRA contains a condition precedent of an applicant first being approved as eligible to vote in the first instance before a name can be removed from the official list of eligible voters. In

---

[12] 52 U.S.C. §20507(a)(4) requires states to "conduct a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters by reason of "(A) the death of the registrant; or (B) a change in the residence of the registrant, in accordance with subsections (b), (c), and (d)."

*Common Cause of Colorado v. Busecher*, 750 F. Supp. 2d 1259, 1261 (2010 D. Colo), the district court was asked to determine whether Colorado's law providing for the cancellation of any new voter registration if one mail confirmation notice was returned as "undeliverable" violated the NVRA. The court held that it did not because the NVRA requires that states "register 'eligible' applicates and maintain 'accurate' voter registration roles" and the confirmation mailing was an eligibility requirement. *Id.* at 1263. If applicants who failed mail verification were never eligible voters, then cancelling a registration application does not remove them from "the official lists of eligible voters. an eligible voter, then it was" *See id.* at 1263-64; 52 U.S.C. §20507(c)(2). The same is true here, where applicants are not officially approved eligible registered voters until mail verification is complete.

Second, Plaintiffs claim S.B. 747 violates the NVRA by "creating a program in which voters may be removed from the voting rolls in the 90 days before any federal election based on their responses to a question in a survey for potential jurors about whether they are U.S. citizens." [D.E. 75 at pp. 37-38]. This is a gross misstatement of the law. The applicable section of S.B. 747 merely provides that "[t]he clerk of superior court shall, *at least on a schedule as determined by the State Board of Elections*, communicate information regarding requests to be excused from jury duty on the basis that the person is not a citizen of the United States to the State Board of Elections" in order for the Board to "use the information to conduct list maintenance." S.B. 747 §44(d) (emphasis added). Key to the statute is the fact that the Board must set the schedule. And, as stated in NCSBE's response to Plaintiffs' NVRA notice, D.E. 75-3, it can "comply with the new list

20

maintenance requirements in Section 44 of Session Law 2023-140 without violating the NVRA's 90-day provision." Furthermore, NCSBE "has no intention of establishing a schedule for the submission of jury-excusal lists form the clerks of superior court that would consequently lead to removals of registered voters in the 90 days prior to a federal election, even assuming for the sake of argument that such removals would be considered 'systematic []' under the NVRA. 52 U.S.C. §20507(c)(2)(A)." [D.E. 75-3 at p. 3]. Plaintiffs have wholly failed to allege a NVRA claim upon which relief can be granted.

## **CONCLUSION**

For these reasons, Legislative Defendants respectfully request that the Court dismiss Plaintiffs' Amended Complaint

Respectfully submitted, this the 5th day of March, 2024.

**NELSON MULLINS RILEY &
SCARBOROUGH LLP**

/s/ Phillip J. Strach
Phillip J. Strach
N.C. State Bar No. 29456
Thomas A. Farr
N.C. State Bar No. 10871
Alyssa M. Riggins
N.C. State Bar No. 52366
Cassie A. Holt
N.C. State Bar No. 56505
Alexandra M. Bradley
N.C. State. Bar No. 54872
301 Hillsborough Street, Suite 1400
Raleigh, NC 27603
Telephone: (919) 329-3800
Facsimile: (919) 329-3779
phil.strach@nelsonmullins.com
tom.farr@nelsonmullins.com
alyssa.riggins@nelsonmullins.com
cassie.holt@nelsonmullins.com
alex.bradley@nelsonmullins.com

*Counsel for Legislative Defendants*

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.3(d), I hereby certify that this brief contains 6012 words

as counted by the word count feature of Microsoft word.

**NELSON MULLINS RILEY &
SCARBOROUGH LLP**

By: /s/ Phillip J. Strach
Phillip J. Strach
N.C. State Bar No. 29456

## CERTIFICATE OF SERVICE

I, Phillip J. Strach, hereby certify that I have this day electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will provide electronic notification to counsel of record.

This the 5th day of March, 2024.

**NELSON MULLINS RILEY & SCARBOROUGH LLP**

/s/ Phillip J. Strach
Phillip J. Strach
N.C. State Bar No. 29456